PAUL J. FISHMAN
United States Attorney
ALLAN URGENT
Assistant United States Attorney
United States Attorney's Office
970 Broad Street, Suite 7000
Newark, New Jersey 07102
(973) 645-2079

JOHN CRUDEN
Assistant Attorney General
BRIAN G. DONOHUE
Senior Attorney
Environmental Enforcement Section
U.S. Department of Justice
601 D Street, N.W.
Washington, D.C. 20004
(202) 514-5413

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY



| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Civil Action No. |
| v. | ) | |
| | ) | |
| | ) | |
| E.I. DU PONT DE NEMOURS AND | ) | |
| COMPANY, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT

The United States of America, by authority of the Attorney General of the United States

and through the undersigned attorney, acting at the request of the Administrator of the United

States Environmental Protection Agency ("EPA"), files this complaint and alleges as follows:

1

## NATURE OF THE ACTION

1.     This is a civil action brought pursuant to Section 113(b) of the Clean Air Act ("CAA"), 42 U.S.C. § 7413(b), and Section 325(c)(4) of the Emergency Planning and Community Right-to-Know Act ("EPCRA"), 42 U.S.C. § 11045(c)(4), to obtain civil penalties against E.I. du Pont De Nemours and Company, Inc. ("DuPont") for violations of the CAA and EPCRA, and the regulations promulgated thereunder, at DuPont's Chambers Works plant in Deepwater, New Jersey.

2.     More specifically, DuPont violated 40 C.F.R. Part 63, Subpart A, (the Part 63 General Provisions), 40 C.F.R. Part 63, Subpart FFFF, (the MON MACT), 40 C.F.R. Part 63, Subpart H, (the Equipment Leak MACT), 40 C.F.R. Part 82, Subpart F (the CFC Regulations), the provisions of the Facility's CAA Title V Operating Permit, and EPCRA at the Chambers Works plant.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345 and 1355; Section 113(b) of the CAA, 42 U.S.C. § 7413(b); and Section 325(c)(4) of EPCRA, 42 U.S.C. § 11045(c)(4).

4.     Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and Section 325 of EPCRA, 42 U.S.C. § 11045, this Court has personal jurisdiction over DuPont because it is a corporation doing business in the State of New Jersey.

5.     Venue lies in the District of New Jersey pursuant to Section 113(b) and (c) of the CAA, 42 U.S.C. § 7413(b) and (c); Section 325(c)(4) of EPCRA, 42 U.S.C. § 11045(c)(4); and

28 U.S.C. §§ 1391(b) and (c), and 1395(a), because DuPont conducts business in this District and because the alleged violations occurred within this District.

## NOTICE

6.      Notice of commencement of this action has been given to the State of New Jersey, specifically, to the New Jersey Department of Environmental Protection ("NJDEP"), as required by Section 113(b) of the CAA, 42 U.S.C. § 7413(b).

## DEFENDANT

7.      DuPont is a Delaware corporation headquartered at 1007 Market Street, Wilmington, Delaware.

8.      At all times pertinent to this action, DuPont owned and/or operated a chemical manufacturing and research facility at the Chambers Works plant (the "Facility") in Deepwater, New Jersey.

9.      DuPont is a "person" within the meaning of Section 302(e) of the CAA, 42 U.S.C. § 7602(e), and Section 329(7) of EPCRA, 42 U.S.C. § 11049(7).

## STATUTORY AND REGULATORY BACKGROUND

I.      **RELEVANT CLEAN AIR ACT PROVISIONS**

A. **Title I:  Hazardous Air Pollutants**

10.      Pursuant to Section 112 of the CAA, 42 U.S.C. § 7412, EPA promulgated regulations that establish national emission, work practice and equipment standards applicable to "owners and operators" of "major sources" of "hazardous air pollutants" ("HAPs").  These are known as National Emission Standards for Hazardous Air Pollutants ("NESHAPS").

11.      Pursuant to Sections 112(a)(1), 42 U.S.C. § 7412(a)(1), a "major source" is any

"stationary source" or group of stationary sources located within a contiguous area and under common control that emits or has the potential to emit ten (10) tons per year ("tpy") or more of any HAP or twenty-five (25) tpy of any combination of HAPs.

12.     Pursuant to Section 112(a)(3) of the CAA, 42 U.S.C. § 7412(a)(3), a "stationary source" is any building, structure, facility, or installation which emits or may emit any air pollutant.

13.     Pursuant to Section 112(a)(9), 42 U.S.C. § 7412(a)(9), an "owner or operator" is any person who owns, leases, operates, controls or supervises a stationary source.

14.     Section 112(b) of the CAA, 42 U.S.C. § 7412(b), is a list of HAPs and, among other things, requires the Administrator to review, and where appropriate, revise the list by rule.

15.      Pursuant to Section 112(c) of the CAA, 42 U.S.C. § 7412(c), EPA published a list of categories or subcategories of major sources of HAPs.

16.     Section 112(d) of the CAA, 42 U.S.C. § 7412(d), required EPA to establish emission standards for those categories and subcategories of major sources of HAPs.  The emissions standards require the use of maximum achievable control technology ("MACT").

17.     Section 112(i)(3)(A) of the CAA, 42 U.S.C. § 7412(i)(3)(A), prohibits the operation of a source in violation of any emissions standard, limitation or regulation issued pursuant to Section 112, and directs the Administrator to set a compliance deadline for existing sources that is no more than 3 years after the effective date of the standard.

### 1. **MON Standards**

18.     Pursuant to Section 112 of the CAA, 42 U.S.C. § 7412, EPA promulgated the Miscellaneous Organic Chemical Manufacturing NESHAP ("MON"), 40 C.F.R. Part 63, Subpart

FFFF.

19.     Pursuant to 40 C.F.R.§ 63.2430, the MON establishes standards and requirements for miscellaneous organic chemical manufacturing and requirements with respect to initial and continuous compliance with emissions limits, operating limits, and work practices.

20.     Pursuant to 40 C.F.R. § 63.2435, the MON applies to an owner or operator of a miscellaneous organic chemical manufacturing process unit ("MCPU"), as that term is defined in 40 C.F.R. § 63.2435(b), that is located at, or is part of, a major source of HAP emissions. Equipment necessary to operate an MCPU, including components such as pumps, compressors, agitators, pressure relief devices, sampling connection systems, open-ended valves or line, valves, connectors, and instrumentation systems, are included within the meaning of an MCPU.

21.     Pursuant to 40 C.F.R. § 63.2440(a), the MON applies to each miscellaneous organic chemical manufacturing "affected source."

22.     Pursuant to 40 C.F.R. § 63.2, an "affected source" is any collection of equipment, activities, or both within a single contiguous area and under common control that is a major or area source for which a NESHAP has been established.

23.     Pursuant to 40 C.F.R. § 63.2445(b), for an existing source before November 10, 2003, compliance with the MON was required by May 10, 2008.

24.     The MON regulations allow sources to comply with the MON by either complying with 40 C.F.R. §§ 63.2480(b)(1)-(5) or complying with the provisions of 40 C.F.R. Part 63, Subpart H ("Equipment Leak MACT") or 40 C.F.R. Part 63, Subpart UU that are referenced in 40 C.F.R. § 63.2480(b). These provisions are known as the "MON LDAR" requirements. DuPont elected to comply with the MON by complying with the provisions in the

5

Equipment Leak MACT.

25.     Pursuant to Section 112(b) of the CAA, aniline, vinylidene chloride and methanol are organic HAPs subject to the MON LDAR requirements.

### 2. Equipment Leak MACT

26.     The purpose of the Equipment Leak MACT is to provide standards for leak detection and repair ("LDAR") and for associated recordkeeping and reporting.

27.     Pursuant to 40 C.F.R. § 63.160(a), the Equipment Leak MACT applies to pumps, compressors, agitators, pressure relief devices, sampling connection systems, open-ended valves or lines, valves, connectors, surge control vessels, bottoms receivers, instrumentation systems, and control devices or closed vent systems that are intended to operate "in organic HAP service" 300 hours or more during the calendar year within a source.

28.     Pursuant to 40 C.F.R. § 63.161, "in organic HAP service" means a piece of equipment, described in Paragraph 27 above, that either contains or contacts a fluid (liquid or gas) that is at least 5% by weight of total organic HAPS as determined according to the provisions of 40 C.F.R. §63.180(d).

29.     Pursuant to 40 C.F.R.§ 63.162(c), each piece of equipment in a process unit, as that term is defined in 40 C.F.R. § 63.161, which is subject to the Equipment Leak MACT is to be identified by the owner or operator so that it can be readily distinguished from other equipment.

Equipment Leak MACT Standards: Pumps in light liquid service

30.     Pursuant to 40 C.F.R. § 63.163(b)(1), the owner or operator of a process unit is required to monitor each pump in light liquid service, as defined in 40 C.F.R.§ 63.161, on a

6

monthly basis to detect leaks by the method specified in § 63.180(b), and to comply with the specified requirements in § 63.163(a) through (d), with exceptions not relevant here.

### Equipment Leak MACT Standards: Valves in gas/vapor service and in light liquid service

31.     Pursuant to 40 C.F.R. § 63.168(b), the owner or operator of a source subject to the Equipment Leak MACT is required to monitor all valves in gas/vapor service, as defined in § 63.161, at the intervals specified in paragraphs § 63.168(c) and (d) and comply with all other provisions in §§ 63.171, 63.177, 63.178, and 63.179.

32.     Pursuant to 40 C.F.R. § 63.168(b)(1), such valves shall be monitored to detect leaks by the method specified in 40 C.F.R. § 63.180(b), i.e., Method 21 of 40 C.F.R. Part 60, Appendix A.  Method 21 includes procedures for certification, calibration and response time testing of leak monitoring equipment.  A portable instrument is used to detect VOC leaks from individual sources.  The instrument detector type is not specified in Method 21, but it must meet the specifications and performance criteria contained in Method 21 at Section 6.0.  DuPont uses a toxic vapor analyzer 1000 equipped with a data logger ("TVA").

33.     Pursuant to 40 C.F.R. §§ 63.168(d) and (e), such valves shall be monitored at specified intervals.

### Equipment Leak MACT Standards: Agitators in gas/vapor service and in light liquid service

34.     Pursuant to 40 C.F.R. § 63.173(a)(1), the owner or operator of a source subject to the Equipment Leak MACT is required to monitor, by Method 21, each agitator in light liquid service and gas/vapor service, as that term is defined in 40 C.F.R. § 63.161, to detect leaks on a monthly basis.

Equipment Leak MACT Test Methods and Procedures

35.    Pursuant to Method 21 at Section 7.2, if cylinder gas mixtures are used for calibration of monitoring equipment, the cylinder gas mixture must be analyzed and certified within ± 2% accuracy.

36.    Pursuant to Method 21 at Section 8.1.3, a response time test is required before placing a piece of monitoring equipment in service.

Equipment Leak MACT Recordkeeping Requirements

37.    Pursuant to 40 C.F.R. § 63.181(b)(1)(i), with exceptions not relevant here, the owner or operator of a regulated source is required to record the identification numbers for all equipment subject to the regulations.

38.    Pursuant to 40 C.F.R. § 63.182(c), the owner or operator of a source subject to the Equipment Leak MACT is required to submit a Notification of Compliance Status within time frames specified therein.

39.    Pursuant to 40 C.F.R. § 63.182(d), the owner or operator of a source subject to the Equipment Leak MACT is required to submit semi-annual Periodic Reports containing the information specified therein, including but not limited to, the number of valves, pumps, compressors, agitators, and connectors for which leaks were detected; the number of each such pieces of equipment that were not repaired; and the reasons for any delay in repairs (40 C.F.R. §§ 63.163(b) and (c); 63.164(f) and (g); 63.168(b), (c), and (f); 63.173(c); and, 63.174(a) and (d)).

**B.  CAA Title VI:  CFC Provisions**

40.    Title VI of the CAA, 42 U.S.C. §§ 7671-7671q (Stratospheric Ozone Protection),

8

mandates the elimination or control of emissions of ozone depleting substances ("ODS").

41.    Section 608(a)(1) of the CAA, 42 U.S.C. § 7671g (National Recycling and Emission Reduction Program), requires EPA to promulgate regulations establishing standards and requirements for the use and disposal of Class I and Class II substances during the service, repair, or disposal of appliances and "industrial process refrigeration" ("IPR"). Those regulations are found at 40 C.F.R. Part 82, Subpart F (the "Chlorofluorocarbon" or "CFC" "Regulations").

42.    Section 601(1) of the CAA, 42 U.S.C § 7671(1), defines "appliance" as any device that contains and uses a "Class I" or "Class II" substance as a refrigerant for commercial purposes, including any air conditioner, refrigerator, chiller, or freezer.

43.    40 C.F.R. § 82.152 defines "refrigerant" as any substance consisting in part or whole of a Class I or Class II substance that is used for purposes of heat transfer and provides a cooling effect.

44.    Pursuant to 40 C.F.R. § 82.152, "industrial process refrigeration is defined as complex customized appliances used in the chemical, pharmaceutical, petrochemical and manufacturing industries.

45.    Section 601(3) of the CAA, 42 U.S.C. § 7671(3), defines a "Class I substance" as a substance listed in or pursuant to Section 602(a) of the CAA, 42 U.S.C. § 7671a(a).

46.    Section 601(4) of the CAA, 42 U.S.C. § 7671(4), defines a "Class II substance" as a substance listed in or pursuant to Section 602(b) of the CAA, 42 U.S.C. § 7602a(b).

47.    Section 602 of the CAA, 42 U.S.C. § 7672, required inclusion of hydrochlorofluorocarbons HCFC-124 (also known as "R-124" or "SUVA-124") and HCFC-22

(also known as "R-22") in the list of Class II substances, and it is so listed as a Class II substance in 40 C.F.R. Part 82, Subpart A, Appendix B. 40 C.F.R. Part 82, Subpart A, Appendix B, further characterizes the Class II substances HCFC-124 as monochlorotetrafluoroethane and HCFC-22 as monocholodifluormethane.

48.     Section 608(a)(3) of the CAA, 42 U.S.C. § 7671g(a)(3), requires EPA to promulgate regulations to reduce emissions of Class I and Class II substances containing CFCs, which include HCFC-124 and HCFC-22, into the atmosphere to the lowest achievable level by maximizing the recapture and recycling of such substances during the service, maintenance, repair, and disposal of appliances.

49.     Pursuant to 40 C.F.R. § 82.150(b), the CFC Regulations apply to any person servicing, maintaining, or repairing appliances, and require the repair of leaks and maintenance of service records, including the date and type of service, and the quantity of refrigerant added.

50.     Pursuant to 40 C.F.R. § 82.156(i)(2), owners or operators of an IPR normally containing more than 50 pounds of refrigerant, with exceptions not relevant here, are required to repair leaks to an appliance if it is leaking at a rate such that the loss of refrigerant will exceed 35% of its total charge of refrigerant during a 12-month period within 30 days of the discovery of the leak or when the leak should have been discovered, or within 120 days of an industrial process shutdown. In addition, a repair must bring the annual leak rate below 35% during a 12-month period.

51.     Pursuant to 40 C.F.R. § 82.152, "leak rate" is defined as the rate at which an appliance loses refrigerant, as measured between refrigerant charges.

52. Pursuant to 40 C.F.R. § 82.152, "industrial process shutdown" means the period when an industrial process or facility temporarily ceases to operate or manufacture whatever is being produced at that facility.

53. Pursuant to 40 C.F.R. § 82.156(i)(2), if the owner or operator of an IPR determines that the leak rate cannot be brought to below 35% during a 12-month period within the aforesaid time frames and determines pursuant to 40 C.F.R. § 82.156(i)(9) that an extension applies, the owner or operator is required, within 30 days of that determination, to document all repair efforts and notify EPA within 30 days of the reason for the inability to conduct the repair.

54. Pursuant to 40 C.F.R. § 82.156(i)(3), when repairs have been conducted without an IPR shutdown or system mothballing, an initial verification test must be conducted upon conclusion of repairs and a follow-up verification leak test must be conducted within 30 days following the initial verification test. The follow-up verification test must be conducted at normal operating characteristics and conditions, unless as otherwise specified in § 82.156(i)(3).

55. Pursuant to 40 C.F.R. § 82.156(i)(5), owners or operators of comfort cooling appliances normally containing more than 50 pounds of refrigerant and not covered by 40 C.F.R. §§ 82.156(i)(1) or (i)(2) of this section must have leaks repaired in accordance with 40 C.F.R. § 82.156(i)(9) of this section if the appliance is leaking at a rate such that the loss of refrigerant will exceed 15 percent of the total charge during a 12-month period, except as described in 40 C.F.R. §§ 82.156(i)(6), (i)(8) and (i)(10) and 40 C.F.R. §§ 82.156(i)(5)(i), (i)(5)(ii) and (i)(5)(iii). Repairs must bring the annual leak rate to below 15 percent.

56. Pursuant to 40 C.F.R. § 82.152, an "initial verification test" is a leak test that is conducted as soon as practicable after a repair is completed.

11

57.     Pursuant to 40 C.F.R. § 82.152, a "follow-up verification test" is a test that involves checking repairs within 30 days of the appliance returning to normal operating characteristics and conditions.  Specifically, a follow-up verification test for appliances from which the refrigerant charge has been evacuated is a test conducted after the appliance or portion of the appliance has resumed operation at normal operating characteristics and conditions of temperature and pressure, with exceptions not relevant here.  A follow-up verification test for repairs conducted without evacuation of the refrigerant charge is a re-verification test conducted after the initial verification test and within 30 days of normal operating conditions.

58.     Pursuant to 40 C.F.R. § 82.156(i)(3)(i), the owner or operator of IPRs that takes the appliance off-line cannot bring the appliance back on-line until an initial verification test indicates that the repairs undertaken in accordance with 40 C.F.R. § 82.156(i)(2)(i) or (i)(2)(ii), have been successfully completed, demonstrating the leak or leaks is/are repaired.

59.     Pursuant to 40 C.F.R. § 82.156(i)(3)(ii), if the follow-up verification test indicates that the repairs to an IPR have not been successful, the owner or operator must retrofit or retire the equipment, in accordance with 40 C.F.R. § 82.156(i)(6).

60.     Pursuant to 40 C.F.R. § 82.156(i)(3)(iii), the owner or operator of an IPR that fails a follow-up verification test must notify EPA within 30 days of the failed follow-up verification test, in accordance with 40 C.F.R. § 82.166(n).

61.     Pursuant to 40 C.F.R. § 82.156(i)(6), within 30 days of discovering a leak greater than the applicable allowable leak rate; or within 30 days of a failed follow-up verification test; or after making good faith efforts to repair leaks as described in 40 C.F.R. § 82.156(i)(6)(i), the owner or operator may elect to develop a one-year retrofit or retirement plan for the leaking

12

appliance. An owner or operator which elects to retrofit the appliance is required to use a refrigerant or substitute with a lower or equivalent ozone-depleting potential than the previous refrigerant and must include such a change in the retrofit plan. The retrofit or retirement plan, or copy thereof, is required to be kept at the site of the appliance and be made available for EPA inspection upon request. The plan must be dated, and all work performed in accordance with the plan must be completed within one year of the plan's date, with exceptions not relevant here.

 62. Pursuant to 40 C.F.R. § 82.156(i)(6)(i), if an owner or operator has made good faith efforts to repair leaks in accordance with 40 C.F.R. § 82.156(i)(2), and has elected prior to completing a follow-up verification test, to retrofit or retire the appliance in accordance with 40 C.F.R. § 82.156(i)(6), the owner or operator is required to develop a retrofit or retirement plan within 30 days of the decision to retrofit or retire the appliance. The owner or operator is required to complete the retrofit or retirement of the appliance within one year and 30 days of when the owner or operator discovered that the leak rate exceeded the applicable allowable leak rate, with exceptions not relevant here.

 63. Pursuant to 40 C.F.R. § 82.156(i)(6)(ii), in all cases subject to 40 C.F.R. § 82.156(i)(6)(i), the written plan is required to be prepared no later than 30 days after the owner or operator has determined to proceed with retrofitting or retiring the appliance.

 64. Pursuant to 40 C.F.R. § 82.166(k), an owner or operator of IPRs normally containing 50 pounds or more of refrigerant is required to keep servicing records documenting the date and type of service, and the quantity of refrigerant added. The owner or operator is required to keep records of refrigerant purchased and added to such appliances in cases where

owners or operators add their own refrigerant. Such records are required to include the date(s) when refrigerant is added.

65.     Pursuant to 40 C.F.R. § 82.166(m), all records required to be maintained must be kept for a minimum of three years, unless otherwise indicated.

66.     If more than 30 days is needed to complete repairs, pursuant to 40 C.F.R. § 82.166(n)(1), an owner or operator of IPRs is required to file a report under 40 C.F.R. § 82.156(i)(2) providing the reasons therefore.

### C. CAA Title V: Operating Permit Program

67.     Title V of the CAA, 42 U.S.C. §§ 7661-7661f, sets forth requirements for the establishment, development, and implementation of a state or federal permit program.

68.     Section 502(a) of the Act, 42 U.S.C. § 7661a.(a), provides that after the effective date of any permit program approved or promulgated pursuant to Title V of the Act, it shall be unlawful for any person to violate any requirement of a permit issued under Title V of the Act or to operate a Title V affected source, except in compliance with a permit issued by a permitting authority under Title V of the Act.

69.     Section 502(b) of the Act, 42 U.S.C. § 7661a.(b), requires EPA to promulgate regulations establishing the minimum elements of a permit program to be administered by any air pollution control agency and sets forth the procedures by which EPA will approve, oversee, and withdraw approval of state operating permit programs.

70.     Section 503(b)(2) of the CAA, 42 U.S.C. § 7661b(b)(2), requires that the regulations promulgated pursuant to Section 502(b) of the CAA include requirements that the permittee periodically (but no less frequently than annually) certify that the facility is in

14

compliance with any applicable requirements of the Title V Operating Permit, and promptly report any deviations from permit requirements.

71.     Section 504(a) of the CAA, 42 U.S.C. § 7661c(b)(2), requires that each Title V operating permit include, among other things, enforceable emission limitations and standards, and such other conditions as are necessary to assure compliance with applicable requirements of the CAA and the applicable state implementation plan ("SIP").

72.     EPA granted final approval of the New Jersey Title V Operating Permit Program, N.J.A.C. 7:27-22.1, *et seq.*, effective November 30, 2001.

73.     N.J.A.C. 7:27-22.19(f) provides that all New Jersey Title V operating permits include a provision requiring that annual compliance certifications be submitted to EPA and NJDEP, the permitting authority.

74.     N.J.A.C. 7:27-22.19(d)(3) provides that all New Jersey Title V operating permits include a provision requiring that six-month deviation reports be submitted to NJDEP.

**D. CAA Enforcement Provisions**

75.     Section 113(b) of the CAA, 42 U.S.C. § 7413(b), authorizes EPA to commence a civil action against any person that is an owner or operator of an affected source or a major stationary source who violates, *inter alia*, any requirement imposed pursuant to Section 112 of the CAA, as well as obtain injunctive relief and civil penalties. Pursuant to the CAA, the Debt Collection Procedure of 1996, 31 U.S.C. § 3701, and EPA implementing regulations codified at 40 C.F.R. Part 19, civil penalties shall not exceed $27,500 per day for each violation occurring prior to and including March 15, 2004; $32,500 per day for each violation occurring after March

15

15, 2004 but prior to and including January 12, 2009; and, $37,500 per day for each violation occurring after January 12, 2009.

76.     Section 502(a) of the CAA, 42 U.S.C. § 7661a(a), provides that it is unlawful for any person to violate any requirement of a permit issued under Title V of the CAA.

77.     Pursuant to Sections 113(a)(3) and (b) of the CAA, 42 U.S.C. §§ 7413(a)(3) and (b), the provisions of State Title V permits are federally enforceable.

## II.     RELEVANT EPCRA PROVISIONS

78.     Section 313(a) of EPCRA, 42 U.S.C. § 11023(a), requires the owner or operator of a facility subject to EPCRA to complete a toxic chemical release form for each toxic chemical listed under Section 313(c), 42 U.S.C. § 11023(c), that, during the previous calendar year, was manufactured, processed, or used at the facility in quantities exceeding the threshold quantity established by Section 313(f), 42 U.S.C. § 11023(f).  The form, denominated as Form R, must to be submitted to EPA and the State in which the facility is located by July 1 of the next year, and it must contain information relating to releases of toxic chemicals during the preceding calendar year.

79.     A toxic chemical is "a chemical or chemical category" listed in 40 C.F.R. § 372.65.

80.     At all relevant times, *sec*-butyl alcohol was a listed toxic chemical.

81.     Section 313(b), 42 U.S.C. § 11023(b), provides that the reporting requirement applies to owners and operators of facilities that have 10 or more full-time employees and are in Standard Industrial Classification Codes 20 through 39.

16

82.    Section 325(c) of EPCRA, 42 U.S.C. § 11025(c), authorizes EPA to commence a civil action against any person who violates any requirement of Section 313, 42 U.S.C. § 11023, to obtain a civil penalty for each date the violation continues. Pursuant to EPCRA, the Debt Collection Procedure CAA of 1996, 31 U.S.C. § 3701, and EPA implementing regulations codified at 40 C.F.R. Part 19, civil penalties are not to exceed $27,500 per day for each violation occurring prior to and including March 15, 2004; $32,500 per day for each violation occurring after March 15, 2004 but prior to and including January 12, 2009; and, $37,500 per day for each violation occurring after January 12, 2009.

## GENERAL FACILITY ALLEGATIONS

83.    On December 22, 2005, NJDEP issued the Facility an initial Title V operating permit under PIN 65491 (No. BOP040001), which was subsequently amended on, including but not limited to, January 9, 2007 (No. BOP060012), September 23, 2008 (No. BOP0080010) and April 27, 2009 (No. BOP090001), and a separate Title V permit governs other Facility operations under PIN 65473 (collectively, the "Permits").

84.    The MON LDAR requirements and the CFC Regulations are included in the Permits.

85.    The Permits require DuPont to submit annual compliance certifications to NJDEP and EPA, and six-month deviation reports to NJDEP.

86.    The Permits require DuPont to submit semi-annual reports identifying and describing, *inter alia*, all deviations from Permit requirements.

87.    The Permits require DuPont to submit an annual compliance certification for each applicable requirement in the Permit within a specified period after the end of each calendar year.

88.     On March 20 through 29, 2007, and July 28 through 30, 2009, EPA and NJDEP conducted inspections at the Facility to determine, *inter alia*, DuPont's compliance with the CAA (including the MON LDAR/Equipment Leak MACT regulations, the CFC regulations, and/or its Title V Operating Permit) and EPCRA.  (Those inspections are hereinafter referred to as the "Inspections.")

89.     EPA also requested, pursuant to Section 114 of the CAA, 42 U.S.C. § 7414 or otherwise, documents from DuPont with respect to its compliance with, *inter alia*, the CAA (including the MON LDAR/Equipment Leak MACT regulations, the CFC regulations, and/or its Title V Operating Permit) and EPCRA at the Facility.  DuPont also provided compliance information to EPA in amended compliance certification reports submitted in January 2011 and November 2012.  (The documents received from DuPont or reviewed during the Inspections are referred to hereinafter as "DuPont's Documents.")

## FACILITY CAA ALLEGATIONS

## I.     MON LDAR/EQUIPMENT LEAK MACT ALLEGATIONS

90.     At all times relevant hereto, the Facility was a "stationary source," and a "major source" of pollutants, including "hazardous air pollutants," within the meaning of Section 112(a) of the CAA, 42 U.S.C. § 7412(a).

91.     At all times relevant hereto, DuPont was an "owner" and an "operator" of the Facility within the meaning of Section 112(a) of the CAA, 42 U.S.C. § 7412(a).

92.     DuPont chose to meet the MON LDAR by compliance with the Equipment Leak MACT.

18

93.     At all times relevant hereto, the Facility and DuPont were subject to, among other things, its Permit, the MON LDAR, the Equipment Leak MACT, the CFC Regulations, and EPCRA.

94.     The Performance Chemicals Business Unit at the Facility, at which DuPont produces specialty chemicals, includes nine buildings, including Buildings A, 1205 and 1470, with equipment subject to the MON, including agitators, valves, pumps and relief valves in gas and/or light liquid service.

95.     In particular, the Performance Chemicals Business Unit at the Facility is an affected source and is subject to the MON regulations.

96.     In Building A of the Performance Chemicals Business Unit, based on the Inspections/DuPont Documents, approximately 68 valves are/were in vinyldene chloride service. The aforesaid pieces of equipment are in organic HAP service.  The valves in vinyldene chloride service are/were in light liquid or gas/vapor service and are regulated components under the MON LDAR/Equipment Leak MACT.

97.     Based on the Inspections/DuPont Documents, and upon information and belief, DuPont failed to tag or otherwise identify the aforesaid valves in Building A from May 10, 2008 through July 29, 2009.

98.     Based on the Inspections/DuPont Documents, and upon information and belief, at times relevant hereto, DuPont did not monitor the aforesaid valves in light liquid or gas/vapor service with a TVA to detect leaks from May 10, 2008 through July 29, 2009.

99.     In Building 1470 of the Performance Chemicals Business Unit, based upon DuPont Documents, approximately 36 pieces of equipment (33 valves, one open-ended line, one

19

pump, and one agitator) are in methanol service. The aforesaid pieces of equipment are in organic HAP service. The equipment in methanol service are in light liquid service and are regulated components under the MON LDAR/Equipment Leak MACT.

100. Based on DuPont Documents and upon information and belief, at times relevant hereto, DuPont failed to tag or otherwise identify the aforesaid equipment in Building 1470 from May 10, 2008 to July 1, 2011.

101. In Building 1205 of the Performance Chemicals Business Unit, based on Inspection/DuPont Documents, approximately 11 pieces of equipment (10 valves and one pump) are/were in aniline service. The aforesaid pieces of equipment are/were in organic HAP service. The equipment in aniline service are/were in heavy liquid service and are regulated components under the MON LDAR/Equipment Leak MACT.

102. Based on Inspection/DuPont Documents, and upon information and belief, at times relevant hereto, DuPont failed to tag or otherwise identify the aforesaid equipment in Building 1205 from May 10, 2008 to July 28, 2009.

103. Based on the Inspections/DuPont Documents, and upon information and belief, at times relevant hereto, DuPont did not include the aforesaid equipment in reports from July 1, 2008 to June 30, 2011 semi-annual MON LDAR reports.

104. Based on the Inspections/DuPont Documents, and upon information and belief, at times relevant hereto, DuPont failed to calibrate the TVA used to monitor leaks with a plus or minus 2% accuracy certified calibration gas from May 10, 2008 through August 9, 2009.

20

## II.  CFC REGULATION ALLEGATIONS

### A.  Industrial Process Refrigeration MR-31

105.    Based on the Inspections/DuPont Documents, at times relevant hereto, DuPont utilized/utilizes an IPR appliance at the Facility denominated as MR-31, located in building J-26, which contains more than 50 pounds of refrigerant.  DuPont is a person which services, maintains or repairs such appliances under the CFC Regulations.

106.    Based on the Inspections/DuPont Documents, at times relevant hereto, MR-31 contained/contains HCFC-124 as a refrigerant.

107.    Based on the Inspections/DuPont Documents, at times relevant hereto, MR-31 was regulated under the CFC Regulations and subject to the requirements that apply to appliances.

108.    Based on the Inspections/DuPont Documents, components of MR-31 regulated under the CFC regulations, leaked, exceeding the annual leak rate of 35% during a 12 month period, and as such, required a leak repair on the following dates:  February 23, 2005; May 3, 2005; October 3, 2005; November 22, 2005; January 5, 2006; February 6, 2006; February 17, 2006; May 17, 2006; and July 28, 2006.

109.    Based on the Inspections/DuPont Documents, DuPont did not repair the leaks with respect to the May 3, 2005, November 22, 2005, and January 5, 2006 leak events.

110.    Based on the Inspections/DuPont Documents, DuPont did not conduct initial verification tests with respect to the May 3, 2005, November 22, 2005, and January 5, 2006 leak events.

111. Based on the Inspections/DuPont Documents, DuPont did not conduct follow-up verification tests with respect to the May 3, 2005, November 22, 2005, and January 5, 2006 leak events.

112. Based on the Inspections/DuPont Documents, DuPont did not record the type of service performed with respect to the following leak events: February 23, 2005; October 3, 2005; February 6, 2006; May 17, 2006; and July 28, 2006.

113. Based on the Inspections/DuPont Documents, DuPont did not notify EPA that it was unable to repair the January 5, 2006 leak event within 30 days of making good faith efforts to repair the leak.

114. Based on Inspections/DuPont Documents, DuPont did not timely develop a retrofit plan within 30 days after it determined to proceed with retrofitting or retiring the appliance. DuPont decided to retrofit the appliance on February 7, 2006 and DuPont did not develop the plan until on or about August 15, 2006.

**B.    Industrial Process Refrigeration MR-47**

115. Based on the Inspections/DuPont Documents, at relevant times hereto, DuPont utilizes an IPR appliance at the Facility denominated as MR-47, located in building J-24, which contains more than 50 pounds of refrigerant. DuPont is a person which services, maintains or repairs such appliances under the CFC Regulations.

116. Based on the Inspections/DuPont Documents, at times relevant hereto, MR-47 contains HCFC-124 as a refrigerant.

117. Based on the Inspections/DuPont Documents, at times relevant hereto, MR-47 was regulated under the CFC Regulations and subject to the requirements that apply to appliances.

118.    Based on the Inspections/DuPont Documents, components of MR-47 regulated under the CFC regulations, leaked, exceeding the annual leak rate of 35% during a 12 month period, and as such, required a leak repair on the following dates:  August 9, 2005; September 26, 2005; May 16, 2006; September 6, 2006; January 13, 2007; and March 22, 2007.

119.    Based on the Inspections/DuPont Documents, DuPont did not repair the leak with respect to the August 9, 2005 leak event.

120.    Based on the Inspections/DuPont Documents, DuPont did not conduct an initial verification test with respect to the August 9, 2005 leak event.

121.    Based on the Inspections/DuPont Documents, DuPont did not conduct a follow-up verification test with respect to the August 9, 2005 leak event.

122.    Based on the Inspections/DuPont Documents, DuPont did not record the type of service performed with respect to the following leak events:  August 9, 2005; September 26, 2005; May 16, 2006; September 6, 2006; January 13, 2007; and March 22, 2007.

**C.    Comfort Cooling MR-3**

123.    Based on DuPont Documents, at relevant times hereto, DuPont utilized a comfort cooling appliance at the Facility denominated as MR-3, located in building 788, which contained more than 50 pounds of refrigerant.  DuPont is a person which services, maintains or repairs such appliances under the CFC Regulations.

124.    Based on DuPont Documents, at times relevant hereto, MR-3 contained HCFC-22 as a refrigerant.

125.    Based on DuPont Documents, at times relevant hereto, MR-3 was regulated under the CFC Regulations and subject to the requirements that apply to appliances.

23

126.     Based on the DuPont Documents, components of MR-3 regulated under the CFC regulations, leaked, exceeding the annual leak rate of 15% during a 12 month period, and as such, required a leak repair on December 17, 2009.

127.     Based on DuPont Documents, DuPont did not record the type of service performed with respect to the December 17, 2009 leak event.

**D.     Comfort Cooling MR-400**

128.     Based on the DuPont Documents, at relevant times hereto, DuPont utilized a comfort cooling appliance at the Facility denominated as MR-400, located in building 745, which contained more than 50 pounds of refrigerant.  DuPont is a person which services, maintains or repairs such appliances under the CFC Regulations.

129.     Based on DuPont Documents, at times relevant hereto, MR-400 contained HCFC-22 as a refrigerant.

130.     Based on DuPont Documents, at times relevant hereto, MR-400 was regulated under the CFC Regulations and subject to the requirements that apply to appliances.

131.     Based on the Inspections/DuPont Documents, components of MR-400 regulated under the CFC regulations, leaked, exceeding the annual leak rate of 15% during a 12 month period, and as such, required a leak repair on the following dates:  February 22, 2010; March 2, 2010; and April 13, 2010.

132.     Based on DuPont Documents, DuPont did not record the type of service performed with respect to the following leak events:  February 22, 2010; March 2, 2010; and April 13, 2010.

24

## III.   TITLE V PERMIT ALLEGATIONS

133.   DuPont is required to submit annual compliance certifications indicating its compliance with the conditions listed in the Facility's Title V Operating Permit, including the CFC Regulations and the MON LDAR requirements.

### A.   CFC Allegations

134.   Based upon the Inspections/DuPont Documents, DuPont failed to report all noncompliance with the CFC Regulations for 2006 through 2011.

### B.   MON LDAR/Equipment Leak MACT Allegations

135.   Based upon the Inspections/DuPont Documents, DuPont failed to report all noncompliance with the MON LDAR requirements for 2008 through 2011 in the annual Title V Certifications.

## IV.   EPCRA ALLEGATIONS

136.   The Facility is subject to the toxic chemical release reporting requirement of EPCRA because it employs more than 10 full time employees; its operations fall within the classification of four SIC codes between the prescribed range of 20 and 39 (namely, 2865, 2821, 2869 and 2843); and, it has used *sec*-butyl alcohol in excess of the applicable threshold quantity.

137.   DuPont, the owner/operator of the Facility under EPCRA, failed to submit timely Form R reports to both EPA and the State of New Jersey for sec-butyl alcohol for the calendar year 2004.

138.   DuPont failed to submit timely Form R reports to both EPA and the State of New Jersey for *sec*-butyl alcohol for the calendar year 2005.

25

## CLAIMS FOR RELIEF

I. **MON LDAR/EQUIPMENT LEAK MACT**

### FIRST CLAIM FOR RELIEF

#### *Failure to Identify Equipment*

139.    Paragraphs 1 through 138 are realleged and incorporated herein by reference.

140.    Based on the Inspections and/or the DuPont Documents, DuPont from at least May 10, 2008 through July 1, 2011 failed to tag or otherwise identify equipment such that it is readily distinguished from other equipment not subject to the MON LDAR/Equipment Leak MACT, in violation of 40 C.F.R. § 63.162(c) and the Facility's Permit.

141.    Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), the Debt Collection Procedure of 1996, 31 U.S.C. § 3701, and 40 C.F.R. Part 19, DuPont is liable for injunctive relief and for civil penalties not to exceed $27,500 per day for each violation occurring prior to and including March 15, 2004, $32,500 per day for each violation occurring after March 15, 2004 but prior to and including January 12, 2009, and $37,500 per day for each violation occurring after January 12, 2009.

### SECOND CLAIM FOR RELIEF

#### *Failure to Monitor*

142.    Paragraphs 1 through 141 are realleged and incorporated herein by reference.

143.    Based on the Inspections and/or the DuPont Documents, DuPont from at least May 10, 2008 through July 29, 2009 failed to monitor at least 68 valves, in violation of 40 C.F.R. §§ 63.161(b) and 63.168(b), and the Facility's Permit.

144.    Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), the Debt Collection Procedure of 1996, 31 U.S.C. § 3701, and 40 C.F.R. Part 19, DuPont is liable for injunctive relief and for civil penalties not to exceed $27,500 per day for each violation occurring prior to and including March 15, 2004, $32,500 per day for each violation occurring after March 15, 2004 but prior to and including January 12, 2009, and $37,500 per day for each violation occurring after January 12, 2009.

## THIRD CLAIM FOR RELIEF

### *Failure to Report*

145.    Paragraphs 1 through 144 are realleged and incorporated herein by reference.

146.    Based on the Inspections and/or the DuPont Documents, DuPont failed to provide accurate results of MON LDAR monitoring in 2008 to 2011 semi-annual MON LDAR reports, in violation of 40 C.F.R. § 63.182 and the Facility's Permit.

147.    Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), the Debt Collection Procedure of 1996, 31 U.S.C. § 3701, and 40 C.F.R. Part 19, DuPont is liable for injunctive relief and for civil penalties not to exceed $27,500 per day for each violation occurring prior to and including March 15, 2004, $32,500 per day for each violation occurring after March 15, 2004 but prior to and including January 12, 2009, and $37,500 per day for each violation occurring after January 12, 2009.

## FOURTH CLAIM FOR RELIEF

### *Failure to use cylinder gases within ±2% accuracy*

148.    Paragraphs 1 through 147 are realleged and incorporated herein by reference.

149.    Based on information and belief, DuPont from May 10, 2008 through August 9,

2009 failed to use monitoring equipment with the proper accuracy, in violation of 40 C.F.R. §§ 63.181(b) and 63.180(b), Method 21 of 40 C.F.R. Part 60, Appendix A, § 7.2, and the Facility's Permit.

150.     Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), the Debt Collection Procedure of 1996, 31 U.S.C. § 3701, and 40 C.F.R. Part 19, DuPont is liable for injunctive relief and for civil penalties not to exceed $27,500 per day for each violation occurring prior to and including March 15, 2004, $32,500 per day for each violation occurring after March 15, 2004 but prior to and including January 12, 2009, and $37,500 per day for each violation occurring after January 12, 2009.

## II.     CFC REGULATIONS CLAIMS FOR RELIEF

### A.     Industrial Process Refrigeration MR-31

#### FIFTH CLAIM FOR RELIEF

##### *Failure to Repair Leak*

151.     Paragraphs 1 through 150 are realleged and incorporated herein by reference.

152.     Based on the Inspections and the DuPont Documents, DuPont on, including but not limited to, May 3, 2005, November 22, 2005, January 5, 2006 failed to repair leaks, in violation of 40 C.F.R. § 82.156 and the Facility's Permit.

153.     Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), the Debt Collection Procedure of 1996, 31 U.S.C. § 3701, and 40 C.F.R. Part 19, DuPont is liable for injunctive relief and for civil penalties not to exceed $27,500 per day for each violation occurring prior to and including March 15, 2004, $32,500 per day for each violation occurring after March 15, 2004 but prior to and including January 12, 2009, and $37,500 per day for each violation occurring after

January 12, 2009.

## SIXTH CLAIM FOR RELIEF

*Failure to Conduct Initial Verification Test*

154.    Paragraphs 1 through 153 are realleged and incorporated herein by reference.

155.    Based on the Inspections and the DuPont Documents, DuPont failed to conduct initial verification tests with respect to the leaks of, including but not limited to, May 3, 2005, November 22, 2005, and January 5, 2006, in violation of 40 C.F.R. § 82.156 and the Facility's Permit.

156.    Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), the Debt Collection Procedure of 1996, 31 U.S.C. § 3701, and 40 C.F.R. Part 19, DuPont is liable for injunctive relief and for civil penalties not to exceed $27,500 per day for each violation occurring prior to and including March 15, 2004, $32,500 per day for each violation occurring after March 15, 2004 but prior to and including January 12, 2009, and $37,500 per day for each violation occurring after January 12, 2009.

## SEVENTH CLAIM FOR RELIEF

*Failure to Conduct Follow-Up Verification Test*

157.    Paragraphs 1 through 156 are realleged and incorporated herein by reference.

158.    Based on the Inspections and the DuPont Documents, DuPont failed to conduct follow-up verification tests with respect to the leaks of, including but not limited to, May 3, 2005, November 22, 2005, and January 5, 2006 in violation of 40 C.F.R. § 82.156 and the Facility's Permit.

159.    Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), the Debt Collection

29

Procedure of 1996, 31 U.S.C. § 3701, and 40 C.F.R. Part 19, DuPont is liable for injunctive relief and for civil penalties not to exceed $27,500 per day for each violation occurring prior to and including March 15, 2004, $32,500 per day for each violation occurring after March 15, 2004 but prior to and including January 12, 2009, and $37,500 per day for each violation occurring after January 12, 2009.

EIGHTH CLAIM FOR RELIEF

*Failure to Document Type of Service*

160.    Paragraphs 1 through 159 are realleged and incorporated herein by reference.

161.    Based on the Inspections and the DuPont Documents, DuPont failed to record the type of service performed with respect to the leaks of February 23, 2005, October 3, 2005, February 6, 2006, May 17, 2006, and July 28, 2006, in violation of 40 C.F.R. §§ 82.150 and 82.166, and the Facility's Permit.

162.    Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), the Debt Collection Procedure of 1996, 31 U.S.C. § 3701, and 40 C.F.R. Part 19, DuPont is liable for injunctive relief and for civil penalties not to exceed $27,500 per day for each violation occurring prior to and including March 15, 2004, $32,500 per day for each violation occurring after March 15, 2004 but prior to and including January 12, 2009, and $37,500 per day for each violation occurring after January 12, 2009.

NINTH CLAIM FOR RELIEF

*Failure to Notify EPA*

163.    Paragraphs 1 through 162 are realleged and incorporated herein by reference.

164.    Based on the Inspections and the DuPont Documents, DuPont did not notify EPA

30

that it was unable to repair the January 5, 2006 leak event within 30 days of making good faith efforts to repair the leak in violation of 40 C.F.R. § 82.156(i)(2) and the Facility's Permit.

165.   Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), the Debt Collection Procedure of 1996, 31 U.S.C. § 3701, and 40 C.F.R. Part 19, DuPont is liable for injunctive relief and for civil penalties not to exceed $27,500 per day for each violation occurring prior to and including March 15, 2004, $32,500 per day for each violation occurring after March 15, 2004 but prior to and including January 12, 2009, and $37,500 per day for each violation occurring after January 12, 2009.

## TENTH CLAIM FOR RELIEF

### *Failure to Timely Develop Retrofit Plan*

166.   Paragraphs 1 through 165 are realleged and incorporated herein by reference.

167.   Based on the Inspections and the DuPont Documents, DuPont failed to timely develop a retrofit or retirement plan within 30 days of the decision (February 7, 2006) to retrofit or retire the appliance in violation of 40 C.F.R. § 82.156(i)(6)(i) and the Facility's Permit.

168.   Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), the Debt Collection Procedure of 1996, 31 U.S.C. § 3701, and 40 C.F.R. Part 19, DuPont is liable for injunctive relief and for civil penalties not to exceed $27,500 per day for each violation occurring prior to and including March 15, 2004, $32,500 per day for each violation occurring after March 15, 2004 but prior to and including January 12, 2009, and $37,500 per day for each violation occurring after January 12, 2009.

## B. Industrial Process Refrigeration MR-47

### ELEVENTH CLAIM FOR RELIEF

#### *Failure to Repair Leaks*

169.    Paragraphs 1 through 168 are realleged and incorporated herein by reference.

170.    Based on the Inspections and the DuPont Documents, DuPont on, including but not limited to, August 9, 2005, failed to repair the leak(s), in violation of 40 C.F.R. § 82.156 and the Facility's Permit.

171.    Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), the Debt Collection Procedure of 1996, 31 U.S.C. § 3701, and 40 C.F.R. Part 19, DuPont is liable for injunctive relief and for civil penalties not to exceed $27,500 per day for each violation occurring prior to and including March 15, 2004, $32,500 per day for each violation occurring after March 15, 2004 but prior to and including January 12, 2009, and $37,500 per day for each violation occurring after January 12, 2009.

### TWELFTH CLAIM FOR RELIEF

#### *Failure to Conduct Initial Verification Test*

172.    Paragraphs 1 through 171 are realleged and incorporated herein by reference.

173.    Based on the Inspections and the DuPont Documents, DuPont failed to conduct initial verification test with respect to the leak(s) of, including but not limited to, August 9, 2005 in violation of 40 C.F.R. § 82.156 and the Facility's Permit.

174.    Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), the Debt Collection Procedure of 1996, 31 U.S.C. § 3701, and 40 C.F.R. Part 19, DuPont is liable for injunctive relief and for civil penalties not to exceed $27,500 per day for each violation occurring prior to and

including March 15, 2004, $32,500 per day for each violation occurring after March 15, 2004 but prior to and including January 12, 2009, and $37,500 per day for each violation occurring after January 12, 2009.

## THIRTEENTH CLAIM FOR RELIEF

### *Failure to Conduct Follow-Up Verification Test*

175.    Paragraphs 1 through 174 are realleged and incorporated herein by reference.

176.    Based on the Inspections and the DuPont Documents, DuPont failed to conduct follow-up verification test with respect to the leak(s) of, including but not limited to, August 9, 2005 in violation of 40 C.F.R. § 82.156 and the Facility's Permit.

177.    Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), the Debt Collection Procedure of 1996, 31 U.S.C. § 3701, and 40 C.F.R. Part 19, DuPont is liable for injunctive relief and for civil penalties not to exceed $27,500 per day for each violation occurring prior to and including March 15, 2004, $32,500 per day for each violation occurring after March 15, 2004 but prior to and including January 12, 2009, and $37,500 per day for each violation occurring after January 12, 2009.

## FOURTEENTH CLAIM FOR RELIEF

### *Failure to Document Type of Service*

178.    Paragraphs 1 through 177 are realleged and incorporated herein by reference.

179.    Based on the Inspections and the DuPont Documents, DuPont failed to record the type of service performed with respect to the leaks of September 26, 2005, May 16, 2006, September 6, 2006, January 13, 2007, and March 22, 2007, in violation of 40 C.F.R. §§ 82.150 and 82.166, and the Facility's Permit.

180.    Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), the Debt Collection

Procedure of 1996, 31 U.S.C. § 3701, and 40 C.F.R. Part 19, DuPont is liable for injunctive relief

and for civil penalties not to exceed $27,500 per day for each violation occurring prior to and

including March 15, 2004, $32,500 per day for each violation occurring after March 15, 2004 but

prior to and including January 12, 2009, and $37,500 per day for each violation occurring after

January 12, 2009.

### C.    Comfort Cooling MR-3

#### FIFTEENTH CLAIM FOR RELIEF

#### *Failure to Document Type of Service*

181.    Paragraphs 1 through 180 are realleged and incorporated herein by reference.

182.    Based on the Inspections and the DuPont Documents, DuPont failed to record the

type of service performed with respect to the incidents of December 17, 2009, in violation of

40 C.F.R. §§ 82.150 and 82.166, and the Facility's Permit.

183.    Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), the Debt Collection

Procedure of 1996, 31 U.S.C. § 3701, and 40 C.F.R. Part 19, DuPont is liable for injunctive relief

and for civil penalties not to exceed $27,500 per day for each violation occurring prior to and

including March 15, 2004, $32,500 per day for each violation occurring after March 15, 2004 but

prior to and including January 12, 2009, and $37,500 per day for each violation occurring after

January 12, 2009.

### D.   Comfort Cooling MR-400

#### SIXTEENTH CLAIM FOR RELIEF

##### *Failure to Document Type of Service*

184.   Paragraphs 1 through 183 are realleged and incorporated herein by reference.

185.   Based on the Inspections and the DuPont Documents, DuPont failed to record the type of service performed with respect to the incidents of February 22, 2010, March 2, 2010, and April 13, 2010, in violation of 40 C.F.R. §§ 82.150 and 82.166, and the Facility's Permit.

186.   Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), the Debt Collection Procedure of 1996, 31 U.S.C. § 3701, and 40 C.F.R. Part 19, DuPont is liable for injunctive relief and for civil penalties not to exceed $27,500 per day for each violation occurring prior to and including March 15, 2004, $32,500 per day for each violation occurring after March 15, 2004 but prior to and including January 12, 2009, and $37,500 per day for each violation occurring after January 12, 2009.

### III.   **TITLE V VIOLATIONS**

#### SEVENTEENTH CLAIM FOR RELIEF

##### *Failure to Report Non-Compliance in Annual Compliance Certifications*

187.   Paragraphs 1 through 186 are realleged and incorporated herein by reference.

188.   Based on the Inspections and/or DuPont Documents, DuPont failed to report noncompliance with the CFC Regulations described above in its 2006, 2007, 2009 and 2010 annual compliance certifications, in violation of the Facility's Permits.

35

189.    Based upon the Inspections/DuPont Documents, DuPont failed to report noncompliance with the MON LDAR requirements described above in its 2008 through 2011 annual compliance certifications, in violation of the Facility's Permits.

190.    Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), the Debt Collection Procedure of 1996, 31 U.S.C. § 3701, and 40 C.F.R. Part 19, DuPont is liable for injunctive relief and for civil penalties not to exceed $27,500 per day for each violation occurring prior to and including March 15, 2004, $32,500 per day for each violation occurring after March 15, 2004 but prior to and including January 12, 2009, and $37,500 per day for each violation occurring after January 12, 2009.

## IV.    EPCRA VIOLATIONS

### EIGHTEENTH CLAIM FOR RELIEF

#### *Failure to Submit Form Rs*

191.    Paragraphs 1 through 190 are realleged and incorporated herein by reference.

192.    Based on the Inspections and/or DuPont Documents, DuPont failed to submit Form Rs in 2003, 2004 and 2005, in violation of Section 313 of EPCRA, 42 U.S.C. § 11023.

193.    Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), the Debt Collection Procedure of 1996, 31 U.S.C. § 3701, and 40 C.F.R. Part 19, DuPont is liable for injunctive relief and for civil penalties not to exceed $27,500 per day for each violation occurring prior to and including March 15, 2004, $32,500 per day for each violation occurring after March 15, 2004 but prior to and including January 12, 2009, and $37,500 per day for each violation occurring after January 12, 2009.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, the United States of America, prays that this Court:

A.    Order DuPont to pay a civil penalty not to exceed $27,500 per day per violation occurring prior to and including March 15, 2004, $32,500 per day per violation occurring after March 15, 2004 but prior to and including January 12, 2009, and $37,500 per day per violation occurring after January 12, 2009.

B.    Permanently enjoin DuPont, pursuant to Section 113(b) of the CAA, 42 U.S.C.§ 7413(b), from any and all future violations of the CAA;

C    Award the United States its costs in this action; and,

D.    Grant such other relief as the Court deems just and proper.

Respectfully submitted,

PAUL J. FISHMAN
United States Attorney for the
 District of New Jersey

ALLAN URGENT
Assistant United States Attorney
United States Attorney's Office
970 Broad Street, Suite 7000
Newark, New Jersey 07102
(973) 645-2079

37

ELLEN MAHAN
Deputy Chief
Environmental Enforcement Section
United States Department of Justice
Environment and Natural Resources Division

BRIAN G. DONOHUE
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
202-514-5413


OF COUNSEL:

DENISE LEONG
Assistant Regional Counsel
Office of Regional Counsel
U.S. EPA, Region 2
290 Broadway
New York, New York 10007-1866